# HOWELL D. ROBINSON *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Municipal Corporations—Ordinance Relating to Assessors of Taxes in Baltimore City Repealed by the New Charter and by Subsequent Ordinance.*

Plaintiff was appointed an assessor of taxes in Baltimore City for the term of two years from March 1, 1898, under a then existing ordinance which provided for the appointment of such assessors by the Mayor, subject to confirmation by the City Council. The new charter of that city (Act of 1898, ch. 123), provided that the ordinances then in force

and not inconsistent with that Act should be continued until changed or repealed by the General Assembly or by the Mayor and City Council; and in another section it was provided that all municipal officials then in office, unless otherwise provided by the Act, should continue to hold their offices under existing laws until their successors are appointed. This charter provided for the appointment of tax assessors by the Appeal Tax Court exclusively. The ordinance under which plaintiff was appointed was repealed by the Mayor and City Council in December, 1899, and plaintiff was then notified that he was no longer in office. In an action to recover salary for the balance of the term for which he was originally appointed. *Held*, that the Mayor and City Council had the power, after the passage of the municipal charter, to repeal the ordinance under which plaintiff held office, and that since that ordinance had not only been repealed but was also inconsistent with the charter, the plaintiff is not entitled to recover.

Appeal from a judgment of the Court of Common Pleas (WRIGHT, J.)

The cause was argued before McSHERRY, C. J., FOWLER, PAGE, PEARCE and SCHMUCKER JJ.

*John V. L. Findlay* (with whom was *Thomas Mackenzie* on the brief), for the appellant.

*Olin Bryan* (with whom was *Wm. Pinkney Whyte* on the brief), for the appellee.

FOWLER, J., delivered the opinion of the Court.

Howell D. Robinson was appointed by the Mayor of Baltimore and duly confirmed by the City Council of that city in February, 1898, as one of the assessors of taxes under an ordinance which was approved March 28th, 1893. His appointment was for two years, dating from March 1st, 1898. By ordinance passed 29th December, 1899, the ordinance of March 28th, 1893, under which Mr. Robinson was appointed, was repealed. Thereafter, on the 1st February, and again on 1st March, the city refused to pay to Mr. Robinson the salary provided by the ordinance under which he was appointed. Mr. Robinson has brought this action of *assumpsit* against the city to recover his salary for January and February, 1900, and the defendant has demurred to the third count of the *narr.*

The Court below sustained this demurrer, and judgment having been entered for the defendant, the plaintiff has appealed. The question presented by the demurrer is whether the ordinance under which the plaintiff was appointed and confirmed as one of the assessors of property for taxes was repealed by the ordinance of December 29th, 1899, passed for that purpose, or by the provisions of the new city charter known as the Act of 1898, ch. 123.

We will first briefly consider the effect of the charter in this respect.

By the third section of the Act of 1898, ch. 123 (Baltimore City Charter), it is provided that "all ordinances of the Mayor and City Council of Baltimore now in *force and not inconsistent with this Act*, shall be and they are hereby continued *until changed* or *repealed*, respectively, by the General Assembly of Maryland or the Mayor and City Council of Baltimore."

It is, of course, conceded that the ordinance of 28th March, 1893 (codified as sec. 2A, Art. 50, of the City Code of 1893), was in force when the new charter went into effect. Hence, if it is *not inconsistent* with the new charter it *is continued* under the very terms of section 3. But the provisions of the former ordinance (sec. 2A, Art. 50, Code 1893), appear to be clearly inconsistent with the provisions of the new charter relating to the same subject. By the former the Mayor biennially appointed assessors of taxes by and with the advice and consent of a convention of both branches of the City Council, while by the latter no power is given to the Mayor to appoint assessors and it is provided by section 147 that the Appeal Tax Court may appoint such number of assessors as they may deem necessary. But it is contended by the plaintiff that in spite of the glaring inconsistency between the old charter and the new charter the provisions of the former in this regard were still in force and full operation until the officers under the new charter were duly appointed and qualified, that is to say, until 1st March, 1900. In support of this contention the plaintiff relies on the third and fourth sections of the Act of 1898, ch.

123, and section 25 of the new charter.  Before, however, considering these provisions, we should recur to the fact that the ordinance on which the plaintiff bases his claim was, in fact, repealed by ordinance of December 29th, 1899.  So that the ordinance on which the plaintiff relies is not only inconsistent with the new charter (sec. 147), but it has been repealed.  If it be conceded, therefore, that the ordinance in question was not inconsistent with the new charter, nevertheless it has not been thereby continued, because it has been repealed.  The contention of the plaintiff, however, is, as we have said, that the Mayor and City Council has no power, under the new charter, to repeal the ordinance of March 28th, 1893.  To sustain this position he relies upon sections 3 and 4 of the Act of 1898, ch. 123, and section 25 of new charter. Section 25 provides that "All municipal officials, boards and commissioners in office under the Mayor and City Council ot Baltimore, upon the date of the passage of this *Article*, unless otherwise provided in this Article, shall hold their respective offices under existing laws and ordinances, the same as if this Article had not been passed, until their successors are appointed, as provided in this section, in February, 1900."  It seems to us too clear for controversy that the meaning of this section is that municipal officers, holding under ordinances in existence and operation when the new charter was passed, should continue to perform the duties of their respective offices until the appointment and qualification of their successors under the new charter, unless in the meantime such ordinance or ordinances should be repealed and the offices abolished.  By the very section 3, relied on by the plaintiff, even the existing and consistent ordinances were to continue in force only until repealed by the Mayor and City Council.  We do not understand the plaintiff to contend that outside and independent of the provisions of the section of the new charter he relies on, the Mayor and City Council could not have repealed the ordinance under which he held and thus abolish his office.  But his contention is that this power to repeal is taken away by the new charter in the *interim* between the approval of the Act

adopting the new charter and the 1st March when the officers under the new charter were to enter upon their duties. But we find nothing in that instrument to justify this view. On the contrary it is provided by section 2 that the new charter was not to be construed to make irrepealable or irrevocable any right which, before its adoption, was repealable or revocable. And certainly it cannot be maintained that before the adoption of the new charter the ordinance in question was irrepealable.

Finally the fourth section of the Act adopting the charter is relied on to the effect that nothing contained therein shall be construed "to interfere with the continuity of the terms or tenure of said officers," that is of such officers who like the plaintiff are alleged to hold under existing ordinances. It had already been provided by section 25 of the Charter that these officers should hold "as if this Article" (the new charter) had not been passed—that is to say—they would undoubtedly hold subject to the right of the Mayor and City Council to abolish their offices, and they so held before and after the new Charter was adopted. Section 4, therefore was adopted not to deprive the Mayor and City Council of the power of repealing ordinances in the *interim* mentioned, that is to say between the adoption of the new charter and 1st March, 1900, but to make it clear that it was not the Legislative intention to interfere with the tenure of any municipal officers, leaving it in the power of the Mayor and City Council where that power had always been reposed, to abolish the office held by the plaintiff if it thought proper to do so.

It follows, therefore, if we are correct in the conclusion that the Mayor and City Council had as well before as after the adoption of the new charter, the power to abolish the office of assessor held by the plaintiff, the demurrer was properly sustained by the Court below, and its judgment must be affirmed.

*Judgment affirmed with costs.*

(Decided March 8th, 1901.)